## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICK LOVELIEN
1116 Hilltop Acres
Westville, OK 74965

    and

STEVEN STEWART
P.O. Box 5794
Hailey, ID 83333

          Plaintiffs,

v.

THE UNITED STATES OF AMERICA

    and

DANIEL BOGDEN
[Redacted]

    and

STEVEN W. MYHRE
[Redacted]

    and

DANIEL SCHIESS
[Redacted]

    and

NADIA JANJUA AHMED
[Redacted]

    and

NEIL KORNZE
[Redacted]

    and

**COMPLAINT**
**[Certain Address Redacted by Consent]**

**1:18-cv-01869-TNM**
**Hon. Trevor N. McFadden**

DAN P. LOVE
[Redacted]

    and

JAMES COMEY
[Redacted]

    and

JOEL WILLIS
[Redacted]

    and

FORMER SHERIFF DOUG GILLESPIE
(Clark County, NV)
7385 Severence Ln
Las Vegas, NV 89131

    and

SHERIFF JOE LOMBARDO
(Clark County, NV)
9904 Alegria Dr
Las Vegas, NV 89144

    and

BUREAU OF LAND MANAGEMENT
1849 C Street NW, Rm 5665
Washington, D.C. 20240

    and

FEDERAL BUREAU OF INVESTIGATION
935 Pennsylvania Ave. NW
Washington, D.C. 20535

    and

CLARK COUNTY SHERIFF'S DEPARTMENT
500 S. Grand Central Pkwy
Las Vegas, NV 89155

and

DOES 1-100, inclusive

               Defendants.

## I.    INTRODUCTION

Plaintiffs Rick Lovelien ("Lovelien") and Steven Stewart ("Stewart") or ("Plaintiffs") bring this action against the United States of America, Daniel Bogden ("Bogden"), Steven W. Myhre ("Myhre"), Daniel Schiess ("Schiess"), Nadia Janjua Ahmed ("Ahmed"), collectively ("U.S. Attorneys"), former Bureau of Land Management ("BLM") SSA Dan P. Love ("Love"), former Director of the BLM Neil Kornze ("Kornze"), the BLM, former Director of the Federal Bureau of Investigation ("FBI") James Comey ("Comey"), FBI agent Joel Willis ("Willis"), former Clark County Sheriff Doug Gillespie ("Gillespie"), Sheriff Joe Lombardo ("Lombardo"), the Clark County Sheriff's Department, the FBI, and other BLM and FBI agents to be named later for violations of the Federal Tort Claims Act ("FTCA"), violations of Plaintiffs' constitutional rights under *Bivens*, and 42 U.S.C. § 1983 violations. The Federal Defendants include the United States of America, the FBI, and the BLM and other federal defendants to be named after discovery. The Individual Defendants include Love, Kornze, Comey, Willis, Bogden, Myhre, Schiess, Ahmed, Gillespie, Lombardo, the Clark County Sheriff's Department, and other individual defendants to be named after discovery.

## II.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction) and 28 U.S.C. § 1332 (Diversity Jurisdiction) because the amount in controversy exceeds $75,000 and there is complete diversity amongst the parties.

2.      This Court has supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367.

3.      Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), (3) a substantial part of the events or omissions giving rise top the claims occurred in this judicial district and Defendants are subject to personal jurisdiction in this District.

## III.    PARTIES

### Plaintiff

4.      Rick Lovelien ("Lovelien") is an individual, natural person, who at all material times was and is a citizen of Montana but in 2014 relocated to Oklahoma.

5.      Steven Stewart ("Stewart") is an individual, natural person, who at all material times was and is a citizen of Idaho.

### Defendants

6.      The United States of America is the federal government, who is a proper Defendant pursuant to 28 U.S.C. § 2679(b)(1) for claims for money damages arising from or out of a negligent or wrongful act and/or omission of any federal employee or agent committed within the course and scope of their employment.

7.      Defendant Daniel Bogden ("Bogden") is an individual and is being sued individually and in his official capacity as the former United States Attorney for the District of Nevada. Bodgen is a citizen of Nevada.

8.      Defendant Steven W. Myhre ("Myhre") is an individual and is being sued individually and in his official capacity as the Acting United States Attorney for the District of Nevada. Myhre is a citizen of Nevada.

9.      Defendant Daniel Schiess ("Schiess") is an individual and is being sued individually and in his official capacity as the Assistant United States Attorney for the District of Nevada. Schiess is a citizen of Nevada.

10.      Defendant Nadia Ahmed ("Ahmed") is an individual and is being sued individually and in her official capacity as the Assistant United States Attorney for the District of Nevada. Ahmed is a citizen of Nevada.

11.      Defendant Bureau of Land Management ("BLM") is a federal agency that is headquartered in Washington, D.C., but with offices in Nevada and other states.

12.      Defendant Federal Bureau of Investigation ("FBI") is a federal agency that is headquartered in Washington, D.C, but with offices in Nevada and other states.

13.      Defendant Dan Love ("Love") is an individual and is being sued individually and in his official capacity as a former agent of the BLM. Love is a citizen of Utah.

14.      Defendant Neil Kornze ("Kornze") is an individual and is being sued individually and in his official capacity as former Director of BLM. Kornze is a citizen of the District of Columbia.

15.      Defendant James Comey ("Comey") is an individual and is being sued individually and in his official capacity as former Director of FBI. Comey is a citizen of Virginia

16.      Defendant Joel Willis ("Willis") is an individual and is being sued individually and in his official capacity as an agent of the FBI. Willis is a citizen of Nevada.

17.      Defendant Doug Gillespie ("Gillespie") is an individual and is being sued individually and in his official capacity as former Sheriff of Clark County. At all material times, Defendant Gillespie was acting under color of state law as part of a conspiracy, in concert with

each and every Defendant, and in the course and scope of his employment and under color of law as a law enforcement officer within Clark County. Gillespie is a citizen of Nevada.

18.     Defendant Joe Lombardo ("Lombardo") is an individual and is being sued individually and in his official capacity as the former Deputy Sheriff and now current Sheriff of Clark County. At all material times, Defendant Lombardo was acting under color of state law as part of a conspiracy, in concert each and every Defendant, and in the course and scope of his employment and under color of law as a law enforcement officer within Clark County. Lombardo is a citizen of Nevada.

19.     Defendant Clark County Sherriff's Department is a state agency that is headquartered in Clark County, Nevada.

## IV.     STANDING

20.     Plaintiffs have standing to bring this action because they have been directly affected, harmed, and victimized by the unlawful conduct complained herein. Their injuries are proximately related to the conduct of Defendants, each and every one of them, jointly and severally.

## V.     FACTS

21.      Cliven Bundy and his sons, Ammon and Ryan, are ranchers who have ranched on a plot of land in Bunkerville, Nevada (the "Bundy Ranch") that their ancestors have ranched on for over 141 years.

22.     Under the guise of collecting grazing fees, the federal government – BLM and FBI – invaded the Bundy Ranch in April of 2014 (the "Standoff") and violently assaulted Cliven Bundy and his family members, including Ammon, Ryan, and sister Margaret. The BLM and FBI also killed the Bundy's cattle and burned the cattle in a secret mass grave.

**Plaintiffs Rick Lovelien and Steven Stewart**

23.     After hearing about and seeing the use of excessive force and assaults on the Bundys, Plaintiffs Lovelien and Stewart traveled to Bunkerville, Nevada after seeing images and reading about the Bundy family's cattle being seized and his family being assaulted by federal and state agents.

24.     Plaintiff Lovelien participated in the peaceful protest and at no time injured or threatened to injure any federal or state agent. He was lawfully in possession of a rifle pursuant to the Second Amendment right to bear arms, which he made sure was not loaded. Lovelien obeyed all of the commands issued by the federal agents, despite the fact that Defendants threatened Lovelien with severe immediate bodily harm or death.

25.     During the entire Standoff, Lovelien's rifle was harnessed over his shoulder and it was never pointed at anyone. Lovelien obeyed all of the commands issued by the federal agents, despite the fact that Defendants threatened Lovelien with severe immediate bodily harm or death.

26.     Plaintiff Stewart participated in the protest and at no time injured or threatened to injure any federal or state agent. He was in possession of a rifle pursuant to the Second Amendment right to bear arms, which he made sure was not loaded. Stewart obeyed all of the commands issued by the federal agents, despite the fact that Defendants threatened Stewart with severe immediate bodily harm or death.

27.     At one point when Stewart and his fellow protesters were ushered onto a freeway overpass, far away from the federal agents involved in the Standoff, Stewart asked a bystander if he could borrow his binoculars to see what was occurring.

28.     At no point did Lovelien or Stewart thereafter attack, harm, or assault anyone, despite the fact that Defendants threatened Lovelien and Stewart with severe immediate bodily harm or death.

29.     Despite these facts, the U.S. Attorney for the District of Nevada charged Lovelien with eleven criminal counts and Stewart with eleven criminal counts, including but not limited to: (1) conspiracy to commit an offense against the United States; (2) conspiracy to impede or injure a federal officer; (3) use and carry of a firearm in relation to a crime of violence and aiding and abetting; (4) assault on a federal officer and aiding and abetting; and (5) threatening a federal law enforcement officer and aiding and abetting.

30.     The FBI did not possess any demonstrable evidence to substantiate any of the charges brought against Lovelien or Stewart but still pursued its investigation and later furthered the prosecution anyway and caused the Department of Justice ("DOJ") and the U.S. Attorney Defendants to indict and prosecute Lovelien and Stewart.

31.     The FBI agents subject to this Complaint improperly influenced the U.S. Attorney for the District of Nevada, which acted illegally herein in its own right, to prosecute Lovelien and Stewart as a direct result of pressure from, and on direct orders of, the DOJ to secure indictments, due to their animus during the Obama administration against the Bundy family and its supporters.

32.     The FBI, BLM, DOJ, and the U.S. Attorney Defendants, working jointly and in concert, engaged in the obstruction of justice by destroying and spoiling evidence and hiding exculpatory evidence to try to obtain a wrongful conviction against Lovelien and Stewart.

33.    For instance, on November 6, 2017, counsel for Cliven Bundy in the later but related Bundy prosecution[1] filed an emergency motion to dismiss for discovery misconduct, which stated, "[d]uring the testimony of witness Mary Hinson, it was revealed that a 'live video feed' depicting the Bundy home, and ingress and egress from the home, was being piped into the BLM 'Command Center' during the events in question." "The existence of this video surveillance has never been disclosed to the defense. No copy of the video has been produced pursuant to the government's affirmative duty to disclose [sic] relevant and material evidence to the defense . . The defense first learned of the actual existence of such facts and evidence on November 3, 2016, *after* trial had already begun." *Id*. (emphasis in original)[2]. This video surveillance shows the innocence of Plaintiffs, the Bundys, and their supporters.

34.    In response, on November 7, 2017, the prosecution was forced to produce additional discovery, which had been unlawfully withheld and never before been produced.

35.    It was then further revealed that the U.S. Attorney for the District of Nevada, in conjunction and at the request of BLM, engaged in a pattern and practice of deceiving the U.S. District Court for the District of Nevada and counsel for Cliven Bundy and his co-defendants as well as unlawfully covering up, hiding, and buying exculpatory evidence.

36.    New but not all discovery containing exculpatory evidence finally was turned over to the defense teams by the prosecution – as a last resort after having been caught lying and obstructing – well after jury selection and the trial itself was already underway.

37.    In regard to their earlier but related prosecution, Lovelien and Stewart were incarcerated for over one year and a half, despite the fact that the FBI and the other Defendants,

---

[1] *United States v. Bundy et al.*, 2:16-cv-00046 (D. Nev.).
[2] David Montero, *Nevada standoff trial postponed as judge orders search for surveillance video*, LA Times, Nov. 7, 2017, available at: http://www.latimes.com/nation/la-na-nevada-bundy-trial-20171107-story.html.

acting in concert, jointly and severally, not only had no evidence of wrongdoing, but also actively destroyed, hid, and buried evidence that would serve to exculpate Plaintiffs.

38.     The FBI agents, officers, and employees exercised improper influence over – and provided false information to – the U.S. Attorney for the District of Nevada, which acted illegally in its own right, to get them to prosecute baseless and unsubstantiated claims because they were under pressure from the Obama DOJ.

39.     Love was the BLM agent in charge of the Standoff.

40.     Kornze served as the Director of the BLM from 2013 until 2017. Kornze had previously worked as a top aide to former Nevada Senator Harry Reid ("Sen. Reid"), who recommended Kornze to his position. Former President Obama subsequently appointed Kornze.

41.     Kornze directly, willfully, personally, and unlawfully used his agency, the BLM, to violate the constitutional and other rights of Plaintiffs.

42.     Comey served as Director of the FBI from September 4, 2013 until May 9, 2017, at all material times during the Obama administration.

43.     Comey directly, willfully, personally, and unlawfully used his agency, the FBI, to violate the constitutional and other rights of Plaintiffs.

44.     Willis, at all relevant times, served as an agent for the FBI. Willis directly, willfully, personally, and unlawfully violated Plaintiffs' constitutional and other rights.

45.     Willis signed off on the original criminal indictment against one of the Bundy's co-defendants, Peter Santilli, that contained maliciously and intentionally fabricated evidence.

46.     Subsequent to this indictment, Willis was aware that there was exculpatory evidence being destroyed, hidden, and shredded, yet deliberately and willfully failed to exercise appropriate remedial action.

47.     The prosecutors' evidence was so non-existent, Plaintiffs' lawyers during trial did not feel the need to put on any witnesses or even present the jury with a closing argument.

**Lovelien and Stewart Complied with the Federal Tort Claims Act**

48.     Plaintiffs Lovelien and Stewart, through counsel, complied with the Federal Tort Claims Act ("FTCA") by filing a complaint with the Director of the FBI on December 13, 2017 against Defendants named here.

49.     Defendants failed to respond within six months and indeed refused to respond to Plaintiffs complaint at all.  *See* Exhibits 1, 2.

50.     This lawsuit is therefore ripe for adjudication in this Court as administrative remedies have been exhausted.

**Facts Pertaining to the Excessive Force and Illegal Seizure During the Standoff**

51.     In April 2014, agents from BLM and the FBI, including Love, descended upon the Bundy Ranch in force under the guise and contrived pretext of enforcing federal grazing fees against the Bundy family.

52.     The violent attacks on the Bundy family and their property made their way into the national media, and seeing how the Bundys were mistreated, assaulted, and harmed, persons, including Plaintiffs, from throughout the west in particular and elsewhere traveled to the Bundy Ranch to peacefully protest.

53.     Plaintiffs Lovelien and Stewart were two such persons who traveled to the Bundy Ranch.

54.     There, the BLM, supported by the FBI and in concert with the other Defendants, jointly and severally, violated Plaintiffs' rights, to peacefully protest in violation of the First

Amendment, relegating them unlawfully to a fenced off compound known as a "First Amendment Zone."

55.     As the Standoff escalated, the citizens who had come to Bunkerville, Nevada, where the Standoff was occurring to protest and protect the Bundys, including Lovelien and Stewart, had guns pointed at them and were threatened by federal agents under the control of Defendants Love, the FBI, the BLM, Comey, Kornze, and Willis, acting in concert with the other Defendants, jointly and severally.

56.     During the Standoff, protestors congregated on a portion on Interstate 15 in Nevada when the Federal Defendants threatened to use tear gas. The protestors had heavily equipped federal agents with sniper rifles and other guns pointed directly at them.

57.     In self-defense, some peaceful protestors lawfully took up arms in self-defense to ensure that Defendants would not slaughter those who were protesting peacefully, including Plaintiffs.

58.     The Standoff finally became so intense and dangerous for all involved that Defendants Gillespie and Lombardo finally agreed to try to convince the federal agents, including Defendant Love, with whom they had been working in concert, to leave the Bundys' land.

**Facts Pertaining to the Whistleblower Report**

59.     On November 27, 2017, a BLM employee, Larry Wooten ("Wooten") sent out a whistleblower memorandum (the "Whistleblower Report") detailing far-reaching, criminal misconduct by the Defendants targeting the Bundys, the rest of their family, and their supporters, such as peaceful protesters like Plaintiffs Lovelien and Stewart.

60.     Wooten had previously served as the lead case agent and investigator for the BLM, and had been tasked with investigating the Standoff at the Bundy Ranch.

61.     The Whistleblower Report, attached as Exhibit 3 and incorporated herein by reference, sets forth numerous revelations directly relevant to this Complaint, including but not limited to:

        a.     The investigation into the Standoff revealed "excessive use of force, civil rights and policy violations";

        b.     BLM supervisory agents repeatedly mocking and degrading the Cliven Bundy, his family, and his co-Defendants, including Plaintiffs here, in an "amateurish carnival atmosphere" that displayed "clear prejudice" against the Bundys personally and their Mormon faith;

        c.     A clear animus and prejudice against the Mormon faith, to the point at which Wooten himself was asked on two separate occasions, "you're not a Mormon are you?"

        d.     Federal agents calling the Bundy family and their supporters, including Plaintiffs, derogatory and disparaging terms, including "retards," "rednecks," "tractor-face," and "inbred."

        e.     Federal agents bragging about roughing up Dave Bundy and violently grinding his face into the ground such that he had bits of gravel stuck in his face;

        f.     BLM agents failing to turn over required discovery and exculpatory evidence to the prosecution team that was helpful to prove the innocence of those indicted as a result of the Standoff;

        g.     Top agents "instigat[ing]" the monitoring of jail phone calls between Plaintiffs and their wives;

      h.     Love intentionally ignoring direction from the U.S. Attorney's Office and his superiors "in order to command the most intrusive, oppressive, large scale and militaristic trespass cattle impound possible";

      i.     Love telling his fellow agents to "go out there and kick Cliven Bundy in the mouth (or teeth) and take his cattle" and "I need you to get the troops fired up to go get those cows and not take crap from anyone";

      j.     Love having a "Kill Book" as a trophy where he "bragged about getting three individuals in Utah to commit suicide" as well as a "kill list for the Bundys";

      k.     During the raid on the Bundy Ranch, BLM agents were caught on tape stating "pretty much a shoot first, ask questions later" and "shoot [Cliven's] f*cking dog first."

      l.     The presence of a secure command post at FBI headquarters in Las Vegas of an "Arrest Tracking Wall" where photos of Cliven Bundy and co-defendant Eric Parker were marked with an "X'" over them, as if to indicate that they had already been killed or will be killed expeditiously. *See* Exhibit 3, incorporated by reference.

62.     Wooten revealed that his supervisors at BLM, including unknown Defendants to be named in discovery, were not sharing key witness statements with Acting U.S. Attorney for the District of Nevada, Defendant Steven Myhre, Assistant U.S. Attorney Defendant Nadia Ahmed, as well as Defendant Willis. In addition, Wooten revealed that Myhre and others in the U.S. Attorneys Office sought to suppress his revelations from the prosecuting court and otherwise, as well as retaliated against him for coming forward as a matter of his conscience.

63.     After disclosing these startling and revelations, Wooten was retaliated against and taken off the investigation and reassigned.

**Facts Pertaining to SSA Love**

64.    Love was the BLM Supervisory Special Agent in charge of the raid on the Bundy Ranch.

65.    Love has an extensive history of engaging in gross misconduct and criminal acts, with little concern for the rights of others, as well as abusing his authority to illegally gain benefits.

66.    Love's extensive history of engaging in gross misconduct and criminal acts has even resulted in a report by the Inspector General titled "Investigative Report of Ethical Violations and Misconduct by Bureau of Land Management Officials" (the "IG Report").[3] Among the egregious instances set forth in the IG Report that involve Love are the following:

(a) Misusing his authority to receive benefits at the 2015 Burning Man Festival;

(b) Threatening to retaliate against BLM agents who had cooperated with the Office of the Inspector General, and;

(c) Abusing his authority to attempt to have his friend hired at BLM.

67.    As set forth previously, Wooten revealed in the Whistleblower Report that Love had a "Kill Book" in which he bragged about getting three individuals in Utah to commit suicide.

68.    Love openly expressed his desire and intent to "command the most intrusive, oppressive, large scale and militaristic trespass cattle impound possible."

69.    Love ordered and commanded agents under his direction and supervision to commit the acts set forth above, and Love himself participated in the commission of these unlawful actions.

---

[3] https://www.doioig.gov/reports/investigation-ethical-misconduct-and-violations-blm-supervisory-agent.

## Facts Pertaining to Prosecutorial Misconduct

70.     Even before Lovelien and Stewart were indicted, it was abundantly clear that there were no facts to support the litany of charges brought against them, particularly since they never threatened or harmed any federal agents before, during, or after the Standoff.

71.     The prosecution was clearly initiated against Plaintiffs as a punishment and/or retaliation for exercising their First and Second Amendment rights in support of the Bundy family. It was also intended to send a message to the public that one should never question or oppose the actions of federal and/or state government, or there would be serious consequences.

72.     Perhaps recognizing this, U.S. Attorney Defendants engaged in a pattern and practice of bad faith and flagrant, gross prosecutorial misconduct, both before and after the Standoff, carefully calculated to deprive the Bundy family and Plaintiffs of their constitutional, statutory, and other rights to make it easier to obtain a conviction, in concert with the BLM, Comey, Kornze, Willis, the FBI, and Sheriff Gillespie and Deputy Sheriff Lombardo, and currently unknown agents to be named in discovery.

73.     The whistleblower Mr. Wooten was informed by his supervisor that it was Mr. Myhre himself who had "furiously demanded" that Mr. Wooten be removed from the investigation, and he was ordered not to contact Mr. Myhre's office again.

74.     Mr. Wooten was precipitously removed from the investigation and all of his files were confiscated.

75.     Furthermore, on December 11, 2017 in the later related *Bundy* Prosecution, the presiding judge, the Honorable Gloria Navarro ("Judge Navarro") read – in open court – "a lengthy list of documents previously undisclosed by prosecutors that could be used to impeach

government witnesses or otherwise bolster defense attorney's arguments that their clients felt surrounded by government snipers prior to the standoff."

76.     As reported by John Smith for Reuters, "some of the prosecution's documents were produced so late that they violated federal evidence discovery rules . . . and as a result could lead [Judge Navarro] to strike witness testimony, call for a continuance, or order a mistrial."

77.     The flagrant bad faith and misconduct by the prosecuting attorneys were so egregious that even Judge Navarro, who had throughout the course of the prosecution exhibited conduct that by any reasonable view indicated her own deep-seated prejudice in favor of the prosecution,[4] had no choice but to dismiss the charges against the Bundys with prejudice.

78.     In dismissing the charges against the Bundys, even Judge Navarro lambasted the conduct of the prosecuting attorneys, saying that they were guilty of "flagrant misconduct" and characterizing their conduct as "outrageous."[5] Judge Navarro held that dismissal with prejudice was the only sufficient remedy given the extreme scope of the misconduct and bad faith committed by the prosecution.

79.     At the January 8, 2018 hearing, the Court also conclusively determined that the prosecution team had "willfully failed to disclose potentially exculpatory, favorable, and material information . . ." in clear violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

---

[4] This pattern and practice of ruling in favor of the prosecution even led the mainstream local paper, the Las Vegas Review Journal to publish an editorial saying, "Government prosecutors have a friend in U.S. District Judge Gloria Navarro."

[5] David French, *Cliven Bundy Wins: Judge Cites 'Flagrant' Federal Misconduct*, National Review, Jan. 9, 2018, available at: http://www.nationalreview.com/article/455263/cliven-bundy-case-dismissed-judge-gloria-navarro-cites-flagrant-federal-misconduct-bureau-land-management.

80.     The Court also pointed out, "[i]t seems no coincidence that most, if not all, of these documents are authored by the FBI . . ." including reports issued by Defendant Willis.

81.     This was, therefore, a concerted effort by <u>all</u> of the Defendants to willfully and maliciously deprive the Bundy family and Plaintiffs of their constitutional and other rights, something that the Court clearly appears to have recognized when granting the extreme remedy of dismissal with prejudice of all charges against Cliven, Ryan Bundy, Ryan Payne, as well as other defendants.

82.     Both Plaintiffs Lovelien and Stewart were summarily and in record time acquitted by a jury.

## FIRST CAUSE OF ACTION

### *Bivens – First Amendment Retaliation*
### *Defendants Love, Willis, Comey, Kornze, and Unknown Federal Agents to be Named in Discovery*

83.     Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and affect, as if fully set forth herein again at length.

84.     Plaintiffs engaged in protected speech and/or activity by peacefully protesting the raid on the Bundy Ranch by federal agents consistent with their right under the First Amendment to the Constitution to protest government action or interference.

85.     Plaintiffs did not harm, threaten, or pose any threat to any federal or state agent while exercising their First Amendment rights.

86.     As a direct and proximate result of Plaintiffs decision to exercise their First Amendment rights, Plaintiffs were (1) arrested, (2) incarcerated, and (3) subjected to prosecution without probable cause or just reason.

87.     Plaintiffs' arrest and subsequent prosecution without probable cause or just reason chilled Plaintiffs from exercising and continuing to exercise their First Amendment rights.

88.     The Defendants formed a retaliatory motive and arrested Plaintiffs because they were exercising their First Amendment rights.

89.     The Defendants' retaliatory motive and deep personal animus for Plaintiffs are set forth above and in the Whistleblower Report.

90.     The Defendants, acting in concert jointly and severally, possessed a retaliatory motive and induced the prosecuting attorneys to prosecute Plaintiffs without probable cause or just reason, because Plaintiffs were exercising their First Amendment rights.

91.     Both Plaintiffs were acquitted by a jury.

WHEREFORE, Plaintiffs pray for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them.

### SECOND CAUSE OF ACTION

***Civil Action for Deprivation of Rights***
***Against All Named Defendants***

### 42 U.S.C. § 1983 – Excessive Force in Violation of Fourteenth Amendment

92.     Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and affect, as if fully set forth herein again at length.

93. 42 U.S.C. § 1983 provides in pertinent part that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

94.     Plaintiffs in this action are citizens of the United States and Defendants Love, Comey, Kornze, Willis, Gillespie, Lombardo, and unknown federal, state, and county agents to be named during discovery are persons for purposes of 42 U.S.C. § 1983.

95.     Defendants Gillespie and Lombardo, as part of the above pled conspiracy, named in this claim, at all relevant times hereto, and as law enforcement officers under the laws of the state of Nevada were acting under the color of state law in their capacity a Deputy Sheriff and Sheriff in Clark County; they further acted in conjunction with and conspired with Defendants Love, Comey, Kornze, Willis, and as yet unknown federal, state, and county agents to be named during discovery and their acts and omissions were conducted within the scope of their official duties or employment.

96.     Plaintiffs possessed the clearly established right under the Fourteenth Amendment to the Constitution to bodily integrity and to be free from excessive force by law enforcement.

97.     Any reasonable person knew or should have known of these rights at the time of the conduct complained herein insofar as they were clearly established at that time; especially to Defendants as sworn law enforcement officers.

98.     Defendants Love, Comey, Kornze, Willis, Gillespie, Lombardo, and unknown federal, state, and county agents to be revealed in discovery's actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiffs' federally protected rights. The force—which each and every Defendant ratified by action, conspiracy, collaboration, an/or in concert with each one—used by these

Defendant Sheriffs shocks the conscience and violated these Fourteenth Amendment rights of Plaintiff as well.

99.     The Defendants unlawfully seized Plaintiffs by means of objectively unreasonable, excessive and physical force that shocks the conscience, thereby unreasonably restraining and depriving Plaintiffs of their freedom.

100.    None of the Defendants engaged in reasonable steps to protect Plaintiffs from the objectively unreasonable and conscience-shocking excessive force. They are therefore, each and every one of them, liable for the injuries and damages resulting from the objectively unreasonable and conscience-shocking force committed by each one separately and in concert.

101.    The Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' federally protected constitutional rights.

102.    The Defendants did so with shocking and willful indifference to Plaintiffs' rights, and in doing so exhibited conscious awareness that they would cause Plaintiffs severe physical and emotional injuries or even death.

103.    The acts or omissions of all Defendants were moving forces behind Plaintiffs' injuries.

104.    These Defendants acted in concert and jointly in a conspiracy with each other.

105.    The acts of omissions of the Defendants as described herein intentionally deprived Plaintiffs of their constitutional rights and caused them other damages.

106.    These Defendants are not entitled to any immunity for the conduct complained herein.

107.    A jury acquitted both Plaintiffs summarily in record time.

108.   The Defendants to this claim at all times relevant hereto were acting as part of a conspiracy, in concert, jointly and severally, pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiffs.

109.   As a proximate result of the Defendants' unlawful conduct, Plaintiffs have suffered actual and physical and emotional injuries, and other damages and losses entitling them to compensatory and special damages, in amounts to be determined at trial.

WHEREFORE, Plaintiffs pray for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them.

### THIRD CAUSE OF ACTION

*Civil Action for Deprivation of Rights*
*Against All Named Defendants*

**42 U.S.C. § 1983 – Retaliation in Violation of the First Amendment**

110.   Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

111.   Plaintiffs engaged in protected speech and/or activity by protesting the raid on the Bundy Ranch by federal agents.

112.   Plaintiffs did not harm or threaten, nor did they pose any threat to any federal or state agent while exercising their First Amendment rights.

113.    As a direct and proximate result of Plaintiffs' decision to exercise their First Amendment rights, Plaintiffs were (1) arrested, (2) incarcerated, and (3) subjected to prosecution without probable cause or just reason.

114.    Plaintiffs' arrest and subsequent prosecution without probable cause or just reason chilled Plaintiffs from continuing to exercise their First Amendment rights.

115.    The Defendants possessed a retaliatory motive and arrested Plaintiffs because they were exercising their First Amendment rights.

116.    The Defendants' retaliatory motive and deep personal animus toward Plaintiffs are set forth herein above and in the Whistleblower Report. *See* Exhibit 3.

117.    The Defendants possessed a retaliatory motive and induced the prosecuting attorneys to prosecute Plaintiffs, without probable cause or just reason, because Plaintiffs were exercising their First Amendment rights.

118.    All Defendants acted in concert with each other and as part of the conspiracy to deprive Plaintiffs of their civil rights.

119.    These Defendants are not entitled to any immunity for the conduct complained herein.

120.    A jury acquitted both Plaintiffs summarily in record time.

121.    As a proximate result of the Defendants' unlawful conduct, Plaintiffs have suffered actual and physical and emotional injuries, and other damages and losses entitling them to compensatory and special damages, in amounts to be determined at trial.

WHEREFORE, Plaintiffs pray for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, and any

other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them.

### FOURTH CAUSE OF ACTION

*Civil Action for Deprivation of Rights*
*Against All Named Defendants*

**42 U.S.C. § 1983 – Malicious Prosecution in Violation of the Fourth Amendment**

122.    Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

123.    At the time of the events complained herein, Plaintiffs possessed the clearly established constitutional right to be free from malicious prosecution without probable cause under the Fourth Amendment and in violation of due process under the Fourteenth Amendment.

124.    Any reasonable person knew or should have known of these rights at the time of the complained of conduct insofar as they were clearly established at that time; especially to the Defendants as sworn law enforcement officers.

125.    All Defendants acted in concert to unlawfully institute, conduct and continue a criminal proceeding.

126.    The Defendants engaged in the conduct described by this Complaint willfully, deliberately, maliciously, in bad faith, and in reckless disregard of Plaintiffs' federally protected constitutional rights.

127.    The prosecution against Plaintiffs for allegations known to be false was malicious, shocking, and objectively unreasonable in light of the circumstances.

128.    Those criminal charges terminated in Plaintiffs' favor with a jury verdict of acquittal. Judge Navarro similarly dismissed the later and related prosecution against Cliven Bundy, Ryan Bundy, Ammon Bundy and Ryan Payne, with prejudice because of the Defendants'

misconduct, which misconduct infected, entered into, and prejudiced the earlier prosecution of Plaintiffs.

129.    The acts or omissions of all the Defendants were moving forces behind Plaintiffs' injuries.

130.    All Defendants acted in concert as part of the conspiracy to deprive Plaintiffs of their civil rights.

131.    The acts or omissions of the Defendants as described herein intentionally deprived Plaintiffs' of their constitutional and statutory rights and caused other damages.

132.    The Defendants are not entitled to any immunity for the conduct complained herein.

133.    The Defendants to this claim were, at all times relevant hereto, acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

134.    A jury acquitted both Plaintiffs summarily in record time.

135.    As a proximate result of the Defendants' unlawful conduct, Plaintiffs have suffered actual and physical and emotional injuries, and other damages and losses entitling them to compensatory and special damages, in amounts to be determined at trial.

WHEREFORE, Plaintiffs pray for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them.

**FIFTH CAUSE OF ACTION**

*Civil Action for Deprivation of Rights*
*Against All Named Defendants*

**42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in Violation of the Fourteenth, and First Amendments and in Violation of 42 U.S.C. § 1981**

136.     Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

137.     Plaintiffs possessed the following clearly established rights, guaranteed to them by the Constitution of the United States, at the time of the conduct complained herein:

a.  The right to bodily integrity and to be free from excessive force by law enforcement under the Fourteenth Amendment;

b.  The right to exercise their constitutional rights of free speech and beliefs under the First Amendment without retaliation or undue interference;

c.  The right to be free from malicious prosecution under the Fourteenth Amendment.

138.     The Defendants knew or should have known of these rights at the time of the complained conduct insofar as they were clearly established at that time, especially to Defendants as sworn law enforcement officers.

139.     The acts or omissions of these Defendants, as described herein, deprived Plaintiffs' of their constitutional and statutory rights and caused them other damages.

140.     The Defendants are not entitled to any immunity for the conduct complained herein.

141.     The Defendants developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate and willful indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Plaintiffs'

constitutional and federal rights as set forth herein, and in the other claims, which resulted from a conscious and deliberate choice to follow a course of action from among various alternative courses of conduct available.

142.    The Defendants, each and every one of them, acting in concert, jointly and severally, created and have unlawfully tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, and practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public generally.

143.    All Defendants acted in concert as part of the conspiracy to deprive Plaintiffs of their civil and constitutional rights.

144.    A jury acquitted both Plaintiffs summarily in record time.

145.    As a proximate result of the Defendants' unlawful conduct, Plaintiffs have suffered actual and physical and emotional injuries, and other damages and losses entitling them to compensatory and special damages, in amounts to be determined at trial.

### SIXTH CAUSE OF ACTION

#### *Violation of the Federal Tort Claims Act*
#### *Against All Named Defendants*

146.    Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and affect, as if fully set forth herein again at length.

147.    The acts and events set forth in this Complaint constitute negligent, reckless, and purposeful acts and omissions of agents and employees of the U.S. government, *inter alia*, First Amendment retaliation, excessive force in violation of the Fourth Amendment, retaliation in violation of the First Amendment, and malicious prosecution in violation of the Fourth

Amendment while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to Plaintiffs in accordance with the laws of the District of Columbia and the fifty states of the United States

WHEREFORE, Plaintiffs pray for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them.

## SEVENTH CAUSE OF ACTION

### *Violation of 28 U.S.C. § 2680(h)*
### *Against All Named Defendants*

148.    Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and affect, as if fully set forth herein again at length.

149.    The acts and events set forth in this Complaint constitute negligent, reckless, and purposeful acts and omissions of agents and employees of the U.S. government, *inter alia*, First Amendment retaliation, excessive force in violation of the Fourth Amendment, retaliation in violation of the First Amendment, and malicious prosecution in violation of the Fourth Amendment while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to Plaintiffs in accordance with the laws of the District of Columbia and the fifty states of the United States.

150.    Because these acts and events were undertaken and caused by investigative and law enforcement agents or person holding themselves out as law enforcement agents of the government, Defendants are liable for all damages caused by such acts, as provided by 28 U.S.C. § 2608(h).

WHEREFORE, Plaintiffs pray for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, in an aggregate amount in excess of $60,000,000.00 and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them, against the Plaintiffs.

## <u>DEMAND FOR JURY TRIAL</u>

**Plaintiffs demand a trial by jury on all counts as to all issues so triable.**

Dated: August 13, 2018                          Respectfully submitted,

                                           */s/ Larry Klayman*
                                          Larry Klayman, Esq.
                                          KLAYMAN LAW GROUP, P.A.
                                          D.C. Bar No. 334581
                                          2020 Pennsylvania Ave. NW
                                          Suite 800
                                          Washington, DC 20006
                                          Tel: (310)-595-0800
                                          Email: leklayman@gmail.com

                                          Attorney for Plaintiffs Lovelien and Stewart